## Case No. 597.

### The ATALANTA.

[1 Brown, Adm. 489;[1] 6 Chi. Leg. News, 491.]

District Court, E. D. Michigan. March, 1874.

STALE CLAIM—PURCHASER BOUND TO USE DUE DILIGENCE.

1. Where the buyer of a vessel, who had given non-negotiable notes for the purchase money, advanced $2,000 on account of certain claims against her, taking up his notes to this amount, and neglected to ascertain the nature and full amount of the claims, which information was easily accessible, it was *Held* that, in suits for the residue of the claims, he did not stand in the position of a bona fide purchaser without due notice, though he had paid for the vessel in full.

2. The purchaser of a vessel is bound to the exercise of reasonable diligence to ascertain the nature and amount of liens against her.

3. Notice to a purchaser, while a sufficient amount of purchase money remains unpaid to meet the liens, is as effectual to keep the liens alive as it would be if he had such notice at the time of such purchase.

In admiralty. Libels for supplies, towage services, and repairs. The only defense was, that the claimant was a subsequent purchaser for a valuable consideration, in good faith and without notice of liens, and that the liens had become stale and extinguished as against the vessel in claimant's hands, by failure of the libellants to prosecute within a reasonable time. In October, 1870, the Atalanta was disabled in a storm on Lake Huron, and the claims in this case were for towage, supplies and repairs rendered in consequence thereof and at that time. The vessel was then owned in Chicago, and belonged to the estate of her former owner, then deceased. One Wm. H. Rogers was administrator of said estate. Immediately after the repairs, the vessel returned to her home

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

port, Chicago. During the season of 1871 she made one trip to Buffalo, but with that exception, she was not again in the waters of this district until she was seized upon, by process from this court, in May, 1872. Libellants had no knowledge of her trip to Buffalo at the time, although they were on the watch for her. The claimant Whitbeck purchased the vessel of the administrator Roberts, in February, 1871, for $10,575, her full value, of which he paid half cash, and for the other half gave five promissory notes, payable in six months from date. For the purpose of protecting Whitbeck against liens, these notes were made non-negotiable, and each one had indorsed upon it a statement that it should not be collectable so long as there were any unpaid liens upon the vessel. These claims were duly filed and proved in the probate court at Chicago. Soon thereafter an arrangement was made by which one Connors, who had a power of attorney from libellants to collect these claims, and the administrator Rogers called upon Whitbeck for the purpose of obtaining payment of the claims. and he did take up two of the $1,000 non-negotiable notes, and gave negotiable notes instead, which were discounted and the proceeds remitted to libellants, who credited the same upon their claims. but they were not sufficient to pay them in full. Two other of the non-negotiable notes were paid to Rogers at the date of their maturity, but the third, for $1,285.50, remains still unpaid. During the winter of 1871–2, the vessel was seized at Chicago upon a chattel mortgage, and to redeem the same Whitbeck paid $1,142, which he claims as an offset to the remaining note, leaving but a small amount of the purchase money unpaid.

H. B. Brown, for libellants.

Connors swears that, at the time he received the $2,000 in negotiable notes of Whitbeck, he informed him of the amount of the claims on account of which the notes were given. Whitbeck denies this, but admits the notes were given on account of these claims. Paying $2,000, as he did, upon these claims, he was bound to inquire their amount, and cannot now plead his ignorance. He cannot shut his eyes and claim the rights of a bona fide purchaser. But irrespective of notice, libellants have been guilty of no laches, and are entitled to recover, as the vessel was not once in the district, to their knowledge, until she was attached. General admiralty rule requires that every libel in rem should state that the "property is in the district." The Sarah Ann, [Case No. 12,342;] The General Jackson, [Id. 5,314;] Burk v. The Rich, [Id. 2,162;] The D. M. French, [Id. 3,938.] The question is, has the libellant used due diligence, considering all the circumstances of the case? The Chusan, [Id. 2,717;] The Rebecca, [Id. 11,619;] The Lillie Mills, [Id. 8,352;] The Eliza Jane, [Id. 4,363;] The Bolivar, [Id. 1,610.] Claimant must be a

bona fide purchaser at the time of payment, as well as at the time of the sale. Blanchard v. Tyler, 12 Mich. 339.

W. A. Moore, for claimant.

Whitbeck was a bona fide purchaser of the vessel, without actual notice of the existence of the claims at the time of the purchase, or that they were outstanding and unpaid at the completion of the purchase price: 1st. By the terms of purchase the title was to be perfect, and the vessel free of liens and incumbrances; and, to secure that, five notes were made non-negotiable. 2d. Rogers and Connors asked for two of the notes to be made negotiable, to pay libellant's claims. No claim for more was made, nor was more ever requested to pay any claims at any time. 3d. The remaining two $1,000 notes were left by Rogers at his bank, and they were paid at or soon after maturity, which Whitbeck would not have done, if he had supposed other claims were outstanding. 4th. The note for $1,287.50 was not paid, because Whitbeck supposed that it was settled by payment of mortgage on the vessel, and costs and expenses connected therewith.

More than one year elapsed after the debts were contracted before any proceedings were taken against the vessel. 1st. The vessel made one trip to Buffalo and return, and therefore, although she may not have stopped at Port Huron, she passed there twice, and must have been for at least from thirty to forty hours within the jurisdiction of this court. 2d. The balance of two seasons of navigation she was accessible, by writ from the district court of the western district of Michigan, or of the northern district of Illinois. 3d. That libellants cannot plead ignorance of the whereabouts of the vessel, for they knew where she was in the summer of 1871, while their agent was endeavoring to collect, in probate court in Chicago, the home port of the vessel.

In this case the libellants had an opportunity to enforce their claim in rem, in the spring of 1871, from this district, for the remainder of the season of 1871, in the western district of Michigan and the northern district of Illinois. They permitted the vessel to pass into a bona fide purchaser's hands, and permitted him to pay the purchase price, without putting the purchaser upon inquiry until after more than one year had elapsed. Under the law, as construed by this court, the claim has become stale. The Buckeye State, [Case No. 13,445;] The Dubuque, [Id. 4,110;] Willard v. Dorr, [Id. 17,679;] Brown v. Jones, [Id. 2,017;] The Mary, [Id. 9,186;] The Sarah Ann, [Id. 12,342;] Pitman v. Hooper, [Id. 11,186;] Jay v. Allen, [Id. 7,235;] The General Jackson, [Id. 5,314;] Ben. Adm. 575; 2 Pars. Shipp. & Adm. 361.

LONGYEAR, District Judge. I. There is no direct evidence that Whitbeck had notice of the particular liens in question at the time of his purchase. The fact, however, that he took the precautions he did to protect himself against liens affords a strong presumption that he knew there were liens then in existence, and to a considerable amount, in addition to the chattel mortgage; and if he knew that much, it would be but a short and reasonable step further, to hold him responsible for the additional knowledge of what those liens were and by whom they were held, especially in the absence of all proof that he made any effort to gain such knowledge, or that it was withheld or concealed from him. But, as we shall presently see, it is unnecessary in this case to resort to such presumptions.

II. Notice to the purchaser while a sufficient amount of the purchase money remained unpaid to meet the liens, is as effectual to keep the liens alive as it would be if he had such notice at the time of such purchase, especially where, as in this case, the balance of purchase money was not secured by negotiable paper. At the time Whitbeck took up the two $1,000 non-negotiable notes and gave negotiable notes in lieu, for the purpose of raising money to pay on these claims, there was then still remaining unpaid on the purchase money an amount more than sufficient to pay the balance of these claims in addition to the chattel mortgage. Then, if not before, he had notice of the existence of these specific claims. But he insists that, because only $2,000 was then demanded of him, he had the right to suppose that the claims represented by Connors, with whom he did the business, were no more than that in amount, although he makes no pretense that any such representation was made by Connors, or that the payment then made was understood to be in full. On the contrary, Connors testified that he thought, as it is quite reasonable he would have done, that he told Whitbeck at the time what the claims amounted to. This was not positively denied by Whitbeck, although he said he did not recollect the fact, and thought it was not so. At all events, and this is conceded by Whitbeck, he was then informed, and knew, if he did not before, that the claims were on file in the probate court, where they were readily accessible to him at any time he might desire to examine them. He also admitted that he may have gone to the probate office and examined the claims, but as to whether he did or did not, his recollection was again quite indistinct. He knew, however, that the information was within his reach, and that it was readily accessible, and if he failed to avail himself of it, he must suffer the consequences of his neglect, and be held responsible for the knowledge he would have gained if he had made the requisite examination. Finally, taking all the proofs together, and taking into consideration the nature and character of the transactions in question, and in view of what a reasonable business man, engaged in an

important business transaction, would naturally and almost inevitably do in the same circumstances, the court cannot avoid the conviction that Whitbeck not only must be presumed to have known, but that he actually did know that there were balances of these claims unpaid, before he paid the remaining two $1,000 notes to the administrator. Therefore, upon all considerations, Whitbeck cannot be granted any exemption from the liens claimed by libellants, for want of notice.

III. Laches on the part of libellants in prosecuting their liens could be made available, if at all, in this case, only in case of want of notice of the liens to Whitbeck as a subsequent purchaser. As the court has already decided that Whitbeck is chargeable with such notice, a consideration of this point is unnecessary. It results, that libellants must have decrees in their favor for the balances due them respectively, including interest to this date, and for costs.

Decree for libellants.